1  | GREENBERG TRAURIG, LLP
2  | JORDAN D. GROTZINGER (SBN 190166)
   | CHARLENE L. OH (SBN 246349)
3  | 2450 Colorado Avenue, Suite 400E
   | Santa Monica, California  90404
4  | Telephone: (310) 586-7700
   | Facsimile: (310) 586-7800
5  | Email:  Grotzingerj@gtlaw.com
   | Email:  Ohc@gtlaw.com
6  |
7  | Attorneys for Defendants
   | LIFELOCK, INC. and RICHARD TODD DAVIS
8  |
9  |

FILED

2008 JUL 10  AM 11: 24

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF
LOS ANGELES

By _____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

SVW
AJWx

ROBERT DILLON, Individually and
on behalf of all others similarly
situated,

        Plaintiffs,

vs.

LIFELOCK, INC., a Delaware
Corporation; RICHARD TODD
DAVIS, a citizen of the State of
Arizona, and JOHN DOES 1 through
10, inclusive,

        Defendants.

CASE NO.  CV08-04515

**NOTICE OF REMOVAL**

**[Supporting Declaration of Tom
Nichols Attached]**

PHX 328,300,008v1 7-9-08

TO THE CLERK OF THE ABOVE-CAPTIONED COURT:

PLEASE TAKE NOTICE that Defendants LifeLock, Inc. ("LifeLock") and Richard Todd Davis ("Davis") (collectively, "Defendants"), by and through their attorneys of record herein, file this Notice of Removal, removing this case from the Superior Court of California for the County of Los Angeles (the "Los Angeles Superior Court") to the United States District Court for the Central District of California (the "Central District") pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, for the following reasons.

1.     Plaintiff Robert Dillon ("Plaintiff") filed this putative class action against Defendants on or about May 27, 2008 in the Los Angeles Superior Court entitled *Dillon, et al. v. LifeLock, Inc., et al.*, Case No. BC391539 (the "Action").

2.     Defendants were served with the Summons, Complaint, Civil Case Cover Sheet, and Civil Case Cover Sheet Addendum and Statement of Location on June 11, 2008.  Pursuant to 28 U.S.C. § 1446(a), a true copy of the foregoing documents is attached hereto as Exhibit 1.  No other pleadings or other documents in the Action have been served on Defendants.

3.     This case is removable to the Central District pursuant to 28 U.S.C. §§ 1332(d)(2)(A) and 1441, in that there is diversity of citizenship for the following reasons. The Action is a putative class action in which any member of the class is a citizen of a state different from any defendant.  Plaintiff is a citizen of California, and a resident of Contra Costa County, California.  Complaint at 5:2-3.  He purports to represent a class consisting of "All residents of the State of California ... that subscribed to LifeLock during the longest period permitted by the applicable statutes of limitations."  Complaint at 22:5-9.  At all relevant times, LifeLock is and was a citizen of a state other than California, in that it is and was a Delaware corporation with its principal place of business located at 60 E. Rio Salado Parkway, Tempe, Arizona.  At all relevant times, Davis is and was a citizen and resident of Chandler, Arizona.  The putative class exceeds 100 members.  Complaint at 22:9-11.

1

PHX 328,300,008v1 7-9-08

4.  The amount in controversy exceeds $5,000,000, exclusive of interest and costs. LifeLock's revenues from California members from 2005 to the date of filing of the Action exceeded $18,000,000. Nichols Dec., ¶ 2. In addition, Plaintiff alleges that putative class members pay approximately $110 per year for LifeLock's services. Complaint at 21:13-16. There currently are over 100,000 LifeLock subscribers who are California residents, and Plaintiff is seeking rescission of the putative class members' subscriptions. Nichols Dec., ¶ 2; Complaint at 31:24-27. Moreover, LifeLock's projected revenues from California from its presently existing members and from prospective future members, which is at risk in this litigation based on Plaintiff's request for injunctive relief barring LifeLock from advertising or selling its services for California members as set forth in the Complaint, also far exceed the required amount in controversy of $5,000,000, when viewed from Defendants' perspective and Defendants' revenues at risk of being lost by the relief sought in this case. Nichols Dec., ¶ 2. Plaintiff's claims for attorneys' fees and punitive damages further increase the amount in controversy (although Defendants do not concede that Plaintiff is entitled to such relief). Complaint at 32:19-24.

5.  This case also is removable to the Central District pursuant to 28 U.S.C. §§ 1332(a) and 1441, in that Plaintiff is, and was at the time of the commencement of the Action, a citizen of California, and a resident of Contra Costa County, California. Complaint at 5:2-3. LifeLock is, and was at the time of the commencement of the Action, a citizen of a state other than California, in that it is and was a Delaware corporation with its principal place of business located at 60 E. Rio Salado Parkway, Tempe, Arizona. Davis is, and was at the time of the commencement of the Action, a citizen and resident of Chandler, Arizona. Because Plaintiff and Defendants are citizens of different states, there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     The case also is removable to the Central District pursuant to 28 U.S.C. §§ 1331 and 1441, in that this Court has original subject matter jurisdiction over the Action for the following reasons. 28 U.S.C. § 1331 provides that District Courts shall have original jurisdiction over all civil actions arising under the Constitution and/or the laws of the United States. The Action alleges, among other things, that LifeLock's conduct violates the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") and that this conduct serves as a predicate for Plaintiff's purported unfair competition and false advertising claims. Complaint at 4:18-21, 26:13-15, 28:11-13. Although Plaintiff does not specifically plead a federal question cause of action pursuant to the FCRA, federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's unfair competition and false advertising claims raise a disputed and substantial federal issue -- whether Defendants violated the FCRA. *See Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308; 125 S. Ct. 2363; 162 L. Ed. 2d 257 (2005). In *Grable*, the question presented to the Court was: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Finding that the plaintiff premised its state claim on federal law, the Court held that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.* at 315. The same rule applies to this case -- the meaning and application of the FCRA is an important federal issue and sensibly belongs in federal court. Moreover, there are similar cases pending in, or being removed to, federal courts in other districts around the country, each involving allegations premised upon LifeLock's national advertising of its nationally available services and seeking determinations of law under the FCRA.

7.     As required by 28 U.S.C. § 1446(b), this Notice of Removal is being filed within 30 days of receipt by Defendants, by service of process or otherwise, of the initial pleading in the Los Angeles Superior Court setting forth the claims for relief on which such proceeding is based and which establishes the right to remove this action to this

3

Court.  By filing this Notice of Removal, Defendants do not waive any rights or defenses, and expressly reserve all rights and defenses they may have relating to the Action.

8.     Upon filing this Notice of Removal, Defendants also are serving counsel for Plaintiff and filing copies of this Notice of Removal with the Los Angeles Superior Court, to effect removal of the Action to the Central District, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants pray that this Action, now pending in the Los Angeles Superior Court, be removed therefrom to the Central District.


DATED:  July 9, 2008                    GREENBERG TRAURIG, LLP


                                        By
                                           JORDAN D. GROTZINGER
                                           Attorneys for Defendants
                                           LIFELOCK, INC. and RICHARD TODD DAVIS

PHX 328,300,008v1 7-9-08

# EXHIBIT 1

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LIFELOCK, INC., a Delaware Corporation; RICHARD TODD
DAVIS, a citizen of the State of Arizona, and JOHN
DOES 1 through 10, Inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROBERT DILLON, Individually and on behalf of all
others similarly situated,

> **FOR COURT USE ONLY**
> *(SOLO PARA USO DE LA CORTE)*
>
> **CONFORMED COPY**
> OF ORIGINAL FILED
> Los Angeles Superior Court
>
> MAY 27 2008
>
> John A. Clarke, Executive Officer/Clerk
>
> BY MARY GARCIA, Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es:)* | CASE NUMBER: *(Número del Caso):* BC 391539 |
|---|---|

LASC - Downtown Courthouse
111 North Hill Street

Los Angeles, California 90012
Central District

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael A. Taitelman, Esq. (SBN 156254)      (310) 201-0005  (310) 201-0045
Jesse A. Kaplan, Esq. (SBN 255059)
FREEDMAN & TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500, Los Angeles, CA 90067

DATE: MAY 27 2008                                         JOHN A. CLARKE, CLERK      M. GARCIA        , Deputy
*(Fecha)*                                                        *(Secretario)*                            *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Legal Solutions Plus | Code of Civil Procedure §§ 412.20, 465 |

Exhibit ___1___   Page ___5___

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Michael A. Taitelman, Esq. (SBN 156254)
Jesse A. Kaplan, Esq. (SBN 255059)
FREEDMAN & TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, CA 90067
TELEPHONE NO.: (310) 201-0005   FAX NO.: (310) 201-0045
ATTORNEY FOR *(Name):* Plaintiffs

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Central District

MAY 2 7 2008

John A. Clarke, Executive Officer/Clerk
BY MARY GARCIA, Deputy

CASE NAME: Dillon v. Lifelock

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited  [ ] Limited (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC391539  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[X] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [X] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [X] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* Three
5. This case [X] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 27, 2008

Michael A. Taitelman, Esq.
(TYPE OR PRINT NAME)                                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

Exhibit 1  Page 6

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) (*if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability (*not asbestos or
    toxic/environmental*) (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*) (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract (*not unlawful detainer
      or wrongful eviction*)
    Contract/Warranty Breach—Seller
      Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
      domain, landlord/tenant, or
      foreclosure*)
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential*)
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    (*arising from provisionally complex
    case type listed above*) (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment (*non-
      domestic relations*)
    Sister State Judgment
    Administrative Agency Award
      (*not unpaid taxes*)
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
      harassment*)
    Mechanics Lien
    Other Commercial Complaint
      Case (*non-tort/non-complex*)
    Other Civil Complaint
      (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition (*not specified
    above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition

Exhibit _____ Page _____

| SHORT TITLE: Dillon v. Lifelock | CASE NUMBER BC391539 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [X] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 10-15 [ ] HOURS/ [X] DAYS

**Item II.** Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (See Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | [ ] A6070  Asbestos Property Damage | 2. |
| | | [ ] A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Non-Personal Injury/Property Damage/Wrongful Death Tort | Business Tort (07) | [X] A6029  Other Commercial/Business Tort (not fraud/breach of contract) | (1.), 2., 3. |
| | Civil Rights (08) | [ ] A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013  Fraud (no contract) | 1., 2., 3. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

Exhibit 1  Page 8

| SHORT TITLE: | Dillon v. Lifelock | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover<br>Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>- See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/<br>Wrongful Death Tort (Cont'd.)** | Professional<br>Negligence<br>(25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination<br>(36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment<br>(15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful<br>eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections<br>(09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage<br>(18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract<br>(37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation   Number of parcels _____ | 2. |
| | Wrongful Eviction<br>(33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property<br>(26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., .6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer -<br>Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer -<br>Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer -<br>Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

Exhibit *1*   Page *9*

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: | Dillon v. Lifelock | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ / Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

| SHORT TITLE: Dillon v. Lifelock | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: |
|---|---|
| [X]1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |
| CITY:                                    STATE:        ZIP CODE: | Class action must be filed in Central Courthouse |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the LASC - Downtown Courthouse       courthouse in the     Central     District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: May 27, 2008

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

Exhibit _____I_____ Page _____II_____

**FREEDMAN & TAITELMAN, LLP**
Michael A. Taitelman, Esq. (SBN 156254)
Jesse A. Kaplan, Esq. (SBN 255059)
1901 Avenue of the Stars, Suite 500
Los Angeles, CA 90067
Telephone: (310) 201-0005
Facsimile (310) 201-0045

**MARKS & KLEIN, LLP**
Justin M. Klein, Esq.
David S. Paris, Esq.
63 Riverside Drive
Red Bank, New Jersey 07701
Pending *pro hac vice* admission

Attorneys for Plaintiffs

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 27 2008

John A. Clarke, Executive Officer/Clerk
BY MARY GARCIA, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

BC 391539

| | |
|---|---|
| ROBERT DILLON, Individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>     vs.<br><br>LIFELOCK, INC., a Delaware Corporation; RICHARD TODD DAVIS, a citizen of the State of Arizona, and JOHN DOES 1 through 10, Inclusive,<br><br>               Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Exhibit ___1___ Page ___12___

- 1 -

COMPLAINT

## COMPLAINT

Plaintiff, Robert Dillon, individually, and on behalf of all others similarly situated, by and through his counsel, Marks & Klein, LLP, and Freedman & Taitelman, LLP, hereby brings this action against Defendants, LifeLock, Inc., Richard Todd Davis, and John Does 1 through 10 (collectively, "Defendants"). In support thereof, Plaintiff alleges as follows:

### I.   NATURE OF THE CASE

1.     This is a class action lawsuit brought by, and on behalf of, California subscribers of LifeLock, Inc. ("LifeLock"), a company that holds itself out as "the industry leader in the rapidly growing field of Identity Theft Protection."

2.     This matter arises from the deceptive business practices and fraudulent advertising campaign implemented by LifeLock, its agents, employees, and representatives, through which it has induced nearly one million individuals, including the Plaintiff and the Putative Class in the state of California, into subscribing to the identity theft protection services the company purportedly provides.

3.     To induce consumers across the country to subscribe to its services, LifeLock claims in its advertisements that it will prevent any possibility of identity theft, in any form.

4.     In LifeLock's ubiquitous marketing campaign, the company's Chief Operating Officer ("CEO"), Richard Todd Davis ("Davis"), cavalierly broadcasts his own social security number – 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 – on television and radio stations across the country, proclaiming his unwavering confidence in LifeLock's purported protections.

5.     In reality, however, LifeLock simply does not provide the level of identity protection that it advertises in its deceptive marketing campaign.

Exhibit ___*1*___ Page ___*13*___

- 2 -

COMPLAINT

6.     Contrary to the all-encompassing identity protection LifeLock advertises, its protection only extends to limited, credit-related instances of identity theft.

7.     Even in those limited credit-related instances, LifeLock does not necessarily protect its subscribers' identities as advertised.

8.     Indeed, the representations made by LifeLock's CEO are false and misleading because his own identity was stolen while he was a LifeLock customer.

9.     While LifeLock has only publicly acknowledged that Davis's identity was compromised on one (1) occasion, there are more than twenty (20) driver's licenses that have been fraudulently obtained through the misappropriation of Davis's personal information.

10.     Furthermore, a simple background check performed using Davis's social security number reveals that his entire personal profile has been compromised to the extent that the birth date associated with his social security number is November 2, 1940, which inaccurately makes Davis 67 years old. This is clearly fraudulent information.

11.     In addition to its inability to provide the level of protection it advertises, LifeLock fails to disclose and intentionally omits from its advertisements the potential **harms** that its services may have on consumers.

12.     As described in further detail below, LifeLock's services can actually have an **adverse** impact on the consumer's ability to obtain credit or favorable interest rates.

13.     Furthermore, in its advertisements, LifeLock fails to advise or make clear to consumers that they could perform each of LifeLock's services on their own, free of charge.

14.     Instead, in the few advertisements in which LifeLock does allude to this fact, LifeLock preys on consumer fears and misleads potential subscribers into believing that the

- 3 -

Exhibit ___1___ Page ___14___

services it provides embody a complicated, time-consuming process that require LifeLock's "expertise" and assistance.

15.     LifeLock also fails to adequately disclose and intentionally omits from its advertisements the fact that the credit reports it orders on behalf of the subscribers is the **free** annual credit report, which subscribers are entitled to receive when placing their own fraud alerts, pursuant to 15 U.S.C. §1681c-(a)(2)(B).

16.     As a result, when LifeLock orders the free annual report, it renders the subscribers ineligible to order their free report for the next twelve months.  This fact is not disclosed to subscribers.

17.     LifeLock also fails to adequately disclose and intentionally omits from its advertisements the true nature and limited scope of its One Million Dollar ($1,000,000) service guarantee.

18.     Pursuant to its own terms, the service "guarantee" is severely limited due to the numerous restrictions, limitations, and waivers that are present within its terms.

19.     Finally, LifeLock fails to disclose that the methods it employs in providing its purported protection are improper and violate the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*

## II.     VENUE

20.     Venue is appropriate in this case pursuant to Cal Code Civ Proc § 410.10, as Defendants transact business, within the state of California, and more specifically in Los Angeles County.  Defendants' liability arose from Defendants' transaction of business in Los Angeles County.

- 4 -

Exhibit _____1_____ Page ___15___

COMPLAINT

### III.   PARTIES

21.   Plaintiff Robert Dillon ("Dillon") is a citizen of the State of California, and a resident of Contra Costa County.

22.   Plaintiff Dillon enrolled as a LifeLock subscriber in 2008.

23.   Plaintiff Dillon is a proper party plaintiff to this action because he has suffered losses as a result of LifeLock's unlawful conduct alleged herein.

24.   Defendant LifeLock is a Delaware corporation with its principal place of business at 60 E. Rio Salado Parkway, Tempe, Arizona 85281.

25.   Defendant LifeLock maintains its principal place of business in Arizona and transacts substantial business within California and, specifically within this Los Angeles County, and is amenable to personal jurisdiction in California.

26.   Defendant Davis is a resident of Chandler, Arizona. Defendant Davis is the Chief Executive Officer of LifeLock.  Davis transacts business within the State of California and has specifically availed himself to the courts of this state.

27.   The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named as JOHN DOES 1 through 10, inclusive, are unknown to Plaintiff and the putative class who, therefore, sue those Defendants by such fictitious names.

28.   Plaintiff and the putative Class are informed and believe and thereon allege that each Defendants sued herein as JOHN DOES 1 through 10 are and were the agents and/or employees of each and every other Defendant and were at all relevant times acting within the course and scope of such agency and employment, and/or are legally responsible in some manner for the events and happenings herein referred to, and caused injuries and damages proximately thereby to Plaintiff and the putative Class as alleged herein.

- 5 -

Exhibit ___1___ Page _16_

29.   Plaintiff will seek to amend this Complaint to allege the true names and capacities of such Defendants when ascertained.

## IV.   GENERAL ALLEGATIONS

### THE HISTORY OF LIFELOCK

30.   In or about 2005, Defendant Davis and his colleague Robert J. Maynard, Jr. ("Maynard") founded LifeLock.

31.   According to the company's website, LifeLock is the "industry leader" in "proactive identity theft protection, specializing in prevention of identity theft rather than the reporting of it."[1]

32.   LifeLock further claims that its identity theft protection system was purportedly developed as a result of "more than three years" of "solid research" and building "relationships with the right organizations.[2]"

33.   Since its inception, LifeLock's purported "goal" has been "to lock down every individual's private information so no one except that individual can approve its use"[3]

### LIFELOCK'S NEFARIOUS ORIGIN

34.   Throughout its countless hours of advertising, LifeLock never discloses any of the less propitious information about its founding or its founding member, Robert Maynard.

35.   Upon information and belief, Maynard developed the idea for LifeLock while sitting in a jail cell after having been arrested for failure to repay a $16,000.00 casino marker taken out at the Mirage Hotel in Las Vegas.

---

[1]   (http://www.lifelock.com/lifelock-for-people/who-we-are/who-is-lifelock, as of May 26, 2008).
[2]   (http://www.lifelock.com/lifelock-for-people/who-we-are/who-is-lifelock, as of May 26, 2008).
[3]   Id.

- 6 -

COMPLAINT



Exhibit ___1___ Page ___17___

36.     Additionally, Maynard, who previously acted as LifeLock's Chief Marketing Officer, is subject to an injunction, obtained by the FTC.

37.     The FTC has banned him for life from "advertising, promoting, offering for sale, selling, performing, or distributing any product or service relating to credit improvement services."

38.     The injunction issued against Maynard resulted from his production of misleading infomercials regarding the services provided by his credit improvement company, National Credit Foundation.

39.     Upon information and belief, these harsh sanctions were also meant to penalize Maynard for engaging in a scheme through which he arranged unauthorized withdrawals from customer accounts at National Credit Foundation.

40.     Finally, and perhaps most disturbing, is that, upon information and belief, Maynard himself has engaged in the very type of identity theft that his company purportedly sets out to eliminate, by stealing his own father's identity.

41.     Specifically, upon information and belief, Maynard misappropriated his father's identity to obtain an American Express card.

42.     Maynard then ran up over One Hundred Thousand Dollars ($100,000.00) in debt on the charge card.

43.     Eventually, American Express sued Maynard's father in an effort to recover the balance.

## THE SERVICES LIFELOCK PROVIDES

44.     According to the company's official website, a general LifeLock subscription provides four (4) services that are designed to protect its subscribers from identity theft.

- 7 -

Exhibit _____ 1 _____   Page _____ 18 _____

COMPLAINT

45.     First, LifeLock "ask[s] the credit bureaus to set free fraud alerts on [the subscriber's] behalf."

46.     Second, LifeLock renews those fraud alerts "every 90 days or so."

47.     Third, LifeLock requests that subscribers' names be removed from pre-approved credit card and junk mail lists.

48.     Fourth, every year, LifeLock orders free credit reports, on behalf of its subscribers, from the major credit bureaus.

## LIFELOCK MISREPRESENTS THE SCOPE OF ITS SERVICES

49.     LifeLock deceptively markets its services through: (a) its website located at www.lifelock.com; (b) affiliated web pages; (c) press releases; (d) news publications; (e) television commercials; and (f) radio advertisements.

50.     LifeLock knows, yet fails to disclose, that the services it provides do not offer the breadth of protection that it promotes through its massive advertising campaign.

51.     The primary service that LifeLock provides to protect against identity theft is the placement and renewal of fraud alerts on subscribers' credit profiles.

52.     The representations made in LifeLock's advertisements regarding the scope and effectiveness of fraud alerts are misleading and fail to disclose material facts regarding the limitations inherent in the service.

53.     Through its advertisements, LifeLock misrepresents and assures consumers that it can protect against all types of fraud including, without limitation, computer hacking, password theft, and other non-credit related theft. These representations are false.

- 8 -

Exhibit _____1_____ Page ___19___

54.     In actuality, the fraud alerts LifeLock places only work to combat credit-related identity theft, which is merely one form of theft amongst many others, which include:  (a) bank account related identity theft; (b) employment related identity theft; (c) medical information related identity theft; and (d) government documents or benefits identity theft.

55.     There is no conspicuous mention of this fact, nor any disclaimer in the plethora of information about the limitations of LifeLock's services on the company website or in LifeLock's advertisements.

56.     In contrast, LifeLock's advertisements deceptively create the illusion that LifeLock provides complete and comprehensive identity protection against all forms of theft, by employing misrepresentations that include, but are not limited to, the following:

(a)     "Here's a report I have on John Sheiper, a young hacker – sent out a virus, put more than 250,000 computers to work stealing passwords to bank accounts from people around the world;"[4]

(b)     "LifeLock's own CEO is so positive our service secures identities that he has broadcast his social security number on our homepage, in our commercials, and in our media spots because he wants to prove that we can protect anyone's identity from scammers, thieves, and hackers;"[5]

(c)     "This very second, someone could be using your identity to...clear out your bank accounts...Stop it from happening now. Call LifeLock...;"[6] and

(d)     "LifeLock, the industry leader in proactive identity theft protection, offers a proven solution that prevents your identity from being stolen before it happens."[7]

---

[4]     LifeLock radio advertisement.
[5]     *See* http://lifelockprotection.wordpress.com/2007/11/10/lifelock-protect-your-good-name, as of May 26, 2008.
[6]     LifeLock radio advertisement.
[7]     *See* http://www.lifelock.com/default.aspx?promocode=Shareasale&SSAID=252168, as of May 26, 2008.

COMPLAINT

Exhibit _____ Page _____

(e)    "One victim even had his identity stolen by a man who went on to commit rape and murders using the victim's name... LifeLock's proactive approach to identity theft protection and $1 Million Total Service Guarantee helps reduce the risk of members becoming victims of [these] **exact scenarios**, as well as the money and time used to restore their good name."[8]

## LIFELOCK MISREPRESENTS THE EFFECTIVENESS OF ITS SERVICES

57.    Through its deceptive advertisements and marketing tools, LifeLock misrepresents the effectiveness of the services it provides.

58.    LifeLock knows, yet fails to disclose in each of its advertisements, that the services it provides do not offer the comprehensive level of protection that is advertised to consumers through its massive advertising campaign.

59.    Specifically, LifeLock misrepresents that its subscribers will receive a telephone call each time his or her personal information is used to apply for new credit.

60.    LifeLock fails to advise subscribers that companies and institutions that issue credit **are not required by law** to contact them, even if they have fraud alerts in place.

61.    LifeLock's misrepresentations regarding the effectiveness of its services include, but are not limited to, the following:

(a)    "Once fraud alerts have been placed, you will receive a phone call — most people register their cell phone numbers — anytime someone tries to open a credit line in your name;"[9]

---

[8]    http://www.lifelock.com/todd-davis?promocode=ADCONJON, as of May 26, 2008. (emphasis added).

[9]    Statement by Defendant Davis, CEO of LifeLock, Inc., in article entitled "Fraud alerts can protect ID," www.azstarnet.com/business/202488, as of May 26, 2008.

COMPLAINT

Exhibit 1 Page 21

(b)    "If it's you trying to open the account, then you'll get the call *while you're standing there*;"[10]

(c)    "The alert *ensures* you will receive a phone call *whenever* someone –even you-tries to establish using your identifying information...;"[11]

(d)    "When someone seeks to open a new account, the creditor *will call* to confirm that it's really you through a series of identifying questions;"[12]

(e)    "If someone is trying to use your personal information, you will be contacted by the creditor that is issuing the line of credit;[13]

(f)    "You will know whenever anyone tries to use your credit before damage is done;"[14]

(g)    "The most important difference between LifeLock and other fraud protection services is our proactive approach to identity theft. LifeLock is not a credit monitoring service that alerts you when we find a problem, we actually stop crime *before it happens by having the credit bureaus alert you* when someone tries to make changes in your status or inquire about your credit;"[15] and

(h)    "We start by putting fraud alerts on your information with all three of the major credit card bureaus and ChexSystems, allowing only you to be able to apply for credit lines or make changes to your accounts. This is the most important step in our service because it prevents thieves from being able to use your identity, since the fraud alert *requires creditors to contact*

---

[10]    Statement by Defendant Davis, CEO of LifeLock, Inc., in article entitled "Fraud alerts can protect ID," www.azstarnet.com/business/202488, as of May 26, 2008. (Emphasis added.)
[11]    *See* www.mylifelock.org, as of May 26, 2008. (Emphasis added.)
[12]    Statement by Defendant Davis, CEO of LifeLock, Inc., in article entitled "Protecting identity among the tell-all generation," www.startribune.com/templates/Print This Story?sid=1191451, as of May 26, 2008. (Emphasis added.)
[13]    *See*    http://www.lifelock.com/lifelock-for-people/what-to-expect/who-calls-me-to-let-me-know-that-someone-is-attempting-to-obtain-credit-in-my-name, as of May 26, 2008.
[14]    *See* http://www.idtheftquiz.org, as of May 26, 2008.
[15]    *See* http://lifelockprotection.wordpress.com/2007/11/10/lifelock-protect-your-good-name/, as of May 26, 2008). (Emphasis added.)

- 11 -

Exhibit _____ Page _____

*you* by the phone number listed on LifeLock's report before verifying any changes, such as extending limits or changing billing addresses."[16]

## LIFELOCK CONCEALS AND OMITS
## THE POTENTIAL HARMS THAT ITS SERVICES
## COULD HAVE ON SUBSCRIBERS' CREDIT PROFILES

62.     Through its deceptive advertisements and marketing tools, LifeLock conceals and omits the adverse effects that its services could have on its subscribers' credit profiles.

63.     LifeLock knows yet fails to disclose that the services it provides can have an adverse impact on a subscriber's credit profile.

64.     For instance, LifeLock's advertisements omit and conceal the fact that its placement and continuous renewal of fraud alerts could actually prohibit its subscribers from obtaining credit.

65.     Additionally, LifeLock's advertisements omit and conceal the fact that its placement and continuous renewal of fraud alerts could have an adverse impact on its subscribers' ability to obtain a home loan or refinance their existing loans.

66.     LifeLock's advertisements also omit and conceal the fact that each time a fraud alert intercepts an attempt to obtain credit, an inquiry is created on the subscriber's credit profile, which can adversely affect the subscriber's credit score.

---

[16]     *See* http://lifelockprotection.wordpress.com/2007/11/01/comparing-lifelock/, as of May 26, 2008. (Emphasis added.)

- 12 -

COMPLAINT

Exhibit ___1___ Page 23

## LIFELOCK OMITS OR CONCEALS THE TRUE ORIGIN

## OF THE CREDIT REPORT IT ORDERS FOR ITS SUBSCRIBERS

67.    LifeLock represents to consumers that its services include a credit report from each of the three credit bureaus every twelve (12) months.

68.    However, through its deceptive advertisements and marketing tools, LifeLock omits and conceals that the credit reports it orders on behalf of its subscribers are the free annual credit reports which subscribers are already entitled to receive without being LifeLock subscribers.

69.    LifeLock also omits and conceals that by its ordering of the credit report, the subscribers are now rendered ineligible to order the free report on their own for the next 12 months.

70.    LifeLock further omits and conceals that ordering the free credit report from www.annualcreditreport.com is duplicative of the free credit report consumers are entitled to when placing a fraud alert under the Fair Credit Reporting Act, 15 U.S.C. § 1681c-1(a)(2)(B).

## LIFELOCK'S TERMS AND CONDITIONS ARE

## SUBSTANTIVELY AND PROCEDURALLY UNCONSCIONABLE

71.    The services LifeLock provides to its subscribers are governed by LifeLock's "Terms and Conditions."

72.    LifeLock's "Terms and Conditions" are presented to consumers on a take-it-or-leave-it basis, in a standardized printed form, and therefore is a contract of adhesion.

- 13 -



73.    None of LifeLock's subscribers, including Plaintiff and the putative class, had any bargaining power with which to negotiate the "Terms and Conditions."

74.    Additionally, the LifeLock "Terms and Conditions" include an arbitration clause that purports to prohibit class actions.

75.    This provision is meant to deter and eliminate any possibility for a consumer to seek redress for any grievances for the deceptive conduct perpetrated by LifeLock.

76.    While LifeLock purports to pay all of the costs of a subscriber's arbitration, this representation is false and misleading, as it fails to take into account the significant ancillary costs incurred as a result of the subscriber being required to arbitrate his or her individual claims in the State of Arizona.

77.    Such costs include, but are not limited to, travel to and lodging in Arizona for both the subscriber and his or her attorney.

78.    Moreover, the LifeLock "Terms and Conditions" attempt to require subscribers to pay their attorney's fees and costs, regardless of whether they prevail in any arbitration.

79.    Such attorney's fees and costs exponentially exceed the cost of LifeLock's subscription fee, which renders the individual pursuit of one's claims against LifeLock not feasible.

80.    Accordingly, the arbitration provision does not allow LifeLock subscribers, including Plaintiff and the putative class, to adequately vindicate their rights.

81.    Such a provision is so one-sided that it shocks the conscience, and is therefore unconscionable and unenforceable.



Exhibit _____ 1 _____ Page _____ 25 _____

- 14 -

COMPLAINT

## LIFELOCK MISREPRENTS THE SCOPE
## AND NATURE OF ITS $1,000,000 SERVICE GUARANTEE

82.     LifeLock deceives consumers further by touting its "one-million dollar service guarantee" in each of its advertisements.

83.     This service falsely and deceptively purports to insulate subscribers in the event LifeLock's services are ineffective.

84.     LifeLock's advertisements deceptively misrepresent the scope of its purported one-million dollar service guarantee, drastically overstating the actual value of its protections, which are essentially rendered useless by virtue of the restrictions, limitations and waivers contained within its terms.

85.     Examples of LifeLock's misrepresentations regarding its million dollar service guarantee include, without limitation, the following:

(a)     "With our million dollar guarantee, you have absolutely *nothing to lose* by signing up with us;"[17]

(b)     "If your Identity [sic] is misused while you are a member of LifeLock, we'll spend up to $1,000,000 to make it right;"[18] and

(c)     "LifeLock will pay you up to $1 million for damages stemming from the security breach. LifeLock says they will "make sure that you get every dollar back, lost wages, costs, actual losses, every dollar up to $1,000,000. Period."[19]

86.     Contrary to the representations made in LifeLock's misleading advertisements, the terms and conditions of the actual guarantee reveal protections that are significantly limited in comparison to those advertised.

---

[17]   *See* http://lifelockprotection.wordpress.com/2007/10/22/the-lifelock-guarantee/, as of May 26, 2008. (Emphasis added.)
[18]   *See* http://www.lifelock.com/lifelock-for-people.aspx, as of May 26, 2008.
[19]   *See* http://www.lifelocklife.com/million-dollar-guarantee.html, as of May 26, 2008.

- 15 -

Exhibit _____ 1 _____ Page _____ 26

87.     Specifically, the express terms of the Service Guarantee, at section "2," paragraph "G," disclaim as follows

> WE WILL PAY UP TO $1,000,000 TO CURE THE FAILURE OR DEFECT IN OUR SERVICE, PER CLIENT, PER LIFETIME FOR ALL INCIDENTS IN THE AGGREGATE, REGARDLESS OF CIRCUMSTANCE...WE WILL NOT MAKE PAYMENTS TO YOU FOR ANY LOSS YOU MAY INCUR. OTHER THAN OUR SERVICE GUARANTEE, AND EXCEPT AS OTHERWISE SET OUT HEREIN WE MAKE NO REPRESENTATION OR WARRANTY ABOUT OUR SERVICE OF ANY KIND, AND WE DISCLAIM ANY IMPLIED WARRANTIES OUTSIDE OF OUR SERVICE GUARANTEE, SUCH AS A WARRANTY OF MERCHANTABILITY OR FITNESS OF OUR SERVICE FOR ANY PARTICULAR PURPOSE.

88.     In actuality, the narrow terms of LifeLock's service guarantee disclaim all consequential damages and all liability for anything beyond a defect in their service.

89.     Accordingly, the service guarantee is only enforceable when LifeLock fails to properly place a fraud alert or properly request to remove the subscriber from a pre-approved credit card or junk mail list.

90.     This language is confusing and deceptive and intended to mislead and deter members from asking LifeLock to cover losses or pay for consequential damages such as hiring professionals to restore their losses, and to provide LifeLock with a basis for denying any such claims.

91.     This language in inconspicuously embedded within LifeLock's "Terms & Conditions."

92.     This language is completely contradictory to the misleading impression that is created by LifeLock's advertisements – namely, that subscribers will receive reimbursement up to one-million dollars ($1,000,000) for financial losses sustained as a result of identity theft.

93.     For example, assume LifeLock properly places a fraud alert on a subscriber's credit profile.  Now assume that a lender issues a credit card to an identity thief because that

- 16 -



lender never called the subscriber. In that case, LifeLock would avoid having to make good on its service guarantee since it properly administered its services. This is deceptive.

94.    In further contrast with the misrepresentations in its advertisements, in the event that the Service Guarantee is triggered, LifeLock is not required to "spend up to $1,000,000.00 to make it right" or "cover all losses and all expenses up to one million dollars" under the Terms & Conditions."[20]

95.    Rather, LifeLock would only be required to:  (a) reimburse direct expenses the subscriber incurred up to One Million Dollars ($1,000,000.00); and (b) assist and advise damaged subscribers by paying third-party professionals up to One Million Dollars ($1,000,000.00) to resolve the subscribers' damages, including, without limitation, damages to their credit profiles and credit ratings.

96.    LifeLock will not use the advertised One Million Dollars ($1,000,000.00) to actually recoup any of the subscribers' financial losses, as the advertisements lead consumers to believe.

## LIFELOCK MISREPRESENTS THE SECURITY OF
## SUBSCRIBERS' PERSONAL INFORMATION

97.    LifeLock misrepresents its ability to maintain the security of its subscribers' personal and confidential information.

98.    LifeLock subscribers who enroll on-line are required to furnish LifeLock with confidential sensitive personal information, including their social security numbers, which they submit over the internet to complete their on-line application.

---

[20] *See* http://www.lifelock.com/lifelock-for-people.aspx, as of May 26, 2008.



Exhibit ___ / ___ Page 28

99.    LifeLock dedicates an entire page of its website to assuring subscribers that it "follows **industry best practices** to secure and protect [their] personal information."[21]

100.    According to the LifeLock website, LifeLock is "ISO 27001 certified for data and operational security," and conducts "background checks on **all of our** employees, including regular random drug testing."[22]

101.    The LifeLock website further states that "All of our facilities are built with the latest biometric security access as well as state-of-the-art surveillance and alarm systems," and that "No computers anywhere outside of secure data centers have our member's critical information on them."[23]

102.    Each of these representations is false and misleading.

103.    Upon information and belief, LifeLock hires third-party contractors who work remotely from their homes.

104.    Upon information and belief, these third-party contractors possess, maintain, and/or have unfettered access to subscribers' social security numbers, credit card numbers, home addresses and dates of birth.

105.    LifeLock does not conduct background checks on all of these third-party contractors.

106.    LifeLock fails to implement any security measures or protocols to secure and protect subscribers' confidential and sensitive information once it has been accessed and is in the control or possession of these third-party contractors.

---

[21] http://lifelock.com/lifelock-for-people/how-we-do-it/how-does-lifelock-secure-my-personal-information, as of May 26, 2008.
[22]    Id.
[23]    Id.

- 18 -

COMPLAINT

107.   LifeLock's website is also vulnerable to compromise and as a result, LifeLock's subscription database is accessible by third-parties, including computer hackers.

108.   As a result of the infirmity of the LifeLock website, the sensitive and confidential information provided by LifeLock subscribers, through the on-line enrollment application, can be accessed and misappropriated by third-parties, including computer hackers.

109.   Upon information and belief, LifeLock has been advised of this lapse in security, and to date, has not resolved the problem.

## LIFELOCK USES DECEPTIVE AND MISLEADING DATA TO SUBSTANTIATE THE EFFICACY OF ITS SERVICES

110.   According to the LifeLock website, "Last year alone, 3 percent of all Americans, that's 8.4 million people, were victims of real identity theft."[24]

111.   LifeLock's website further states that "Analysts at LifeLock, which protects the identities of over a million members, statistically would have expected to see 10,000 of its members experience identity thefts in just the first four months of 2008."[25]

112.   LifeLock's website deceptively claims that "only 105 LifeLock members in the history of the company, or just over .01 percent of those protected by LifeLock, have ever reported their identities stolen – and LifeLock 's $1 Million Total Service Guarantee completely covered every one of them."[26]

---

[24] http://www.lifelock.com/todd-davis?promocode=ADCONION, as of May 26, 2008.
[25] Id.
[26] Id.

- 19 -

Exhibit _____ 1 _____ Page ____ 30

COMPLAINT

113.   This statistic appears in numerous LifeLock advertisements and LifeLock CEO Davis has boasted about this "statistical data" during countless appearances on television, radio, and streaming internet video.

114.   This "statistical data" is just another misleading piece of information meant to induce potential subscribers to enroll in LifeLock.

115.   Specifically, the reason that "only 106 LifeLock members in the history of the company...have ever reported their identities stolen" is because LifeLock's definition of identity theft is extremely narrow, and intentionally so, to allow for the perpetration of its' fraudulent and deceptive scheme.

116.   In contrast with LifeLock's inadequate definition of identity theft, which relates only to new-account, credit related instances of theft, the Federal Trade Commission employs a much broader meaning.

117.   The FTC defines identity theft as occurring when someone "uses your personally identifying information, like your name, Social Security number, or credit card number, without your permission, to commit fraud or other crimes."[27]

118.   The FTC further provides examples of the frauds that are being committed with misappropriated identity information, which include "credit card fraud," "phone and utilities fraud," "bank/finance fraud," "government documents fraud," and "medical information fraud."[28]

119.   Since LifeLocks' services, namely the placement of fraud alerts, can only protect against new-account, credit related fraud, the statistics LifeLock showcases to "illustrate" the efficacy of its services are skewed and deceptive.

---

[27]   http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html#Whatisidentitytheft, as of May 26, 2008.
[28]   Id.

- 20 -

COMPLAINT

## THE PLAINTIFF ROBERT DILLON

120.   In or about April 2008, Plaintiff Dillon decided to subscribe to LifeLock after viewing the company's television advertisements and hearing the company's radio advertisements.

121.   Based on those advertisements, Dillon was lead to believe that LifeLock would provide him with comprehensive protection against all forms of identity theft.

122.   Dillon's decision to subscribe to LifeLock was also heavily based on the company's purported One-Million-Dollar ($1,000,000) service guarantee, which, he was led to believe, would reimburse him for any financial damage sustained by a subscriber as a result of identity theft.

123.   Upon information and belief, as a result of its fraudulent campaign, LifeLock has generated nearly one million subscribers, each of whom pay approximately One Hundred and Ten Dollars ($110.00) per year for its "services."

124.   Thus, by virtue of LifeLock's deceptive scheme, its subscribers have each suffered an ascertainable loss in the form of the subscription fees they pay for services that: (a) do not provide the level of identity protection advertised; (b) may actually impair their ability to obtain credit or financing; and (c) provide a service guarantee that is, at best, illusory.

## V.   CLASS ALLEGATIONS

125.   This action is brought as a class action pursuant to Cal Code Civ. Proc. § 382, on behalf of the named Plaintiff and all others similarly situated.

Exhibit  1  Page  32

126.     The legal claims at issue in this matter are questions of common or general interest, of many persons, and the parties are numerous, it is impracticable to bring them all before the court.

127.     The class is tentatively defined as:

All residents of the state of California (including persons and business entities) that subscribed to LifeLock during the longest period permitted by the applicable statutes of limitations. Excluded from the Class are the officers, directors and employees of Defendants and their respective legal representatives, heirs, successors and assigns.

128.     Upon information and belief, the class has more than 1,000 members (including present and past subscribers).

129.     All members of the class assert claims for violation of the law as more particularly set forth herein.

130.     All class members pray for money damages.

131.     All class members pray for temporary and permanent injunctive relief, as well as declaratory relief, because the parties opposing the class have acted on grounds generally applicable to the class, thereby making appropriate injunctive relief to the class as a whole.

132.     The proposed class meets the criteria set forth for the maintenance of a class action as described below.

133.     **Numerosity:**   Members of the class are so numerous that their individual joinder is impractical.  The precise identities, number and addresses of members of the class are unknown to Plaintiff, but may and should be known with proper and full discovery of Defendants, third-parties, and their respective records.

134.     **Existence of Common Questions of Fact:**  The common nucleus of operative facts to be determined for the class as a whole center upon the deceptive advertising and

- 22 -

marketing campaign employed by LifeLock and its agents in California.  The questions of fact common to class members include, but are not limited to, the deceptive advertising and marketing campaign described herein.

135.  **Existence of Common Questions of Law**:  There is a well-defined commonality and community of interest in the questions of fact and law affecting the members of the class.  The common questions of fact and law include, among other things:

(a)   Whether and to what extent Defendants' practices, conduct, and misrepresentations violate California state law;

(b)   Whether Defendants' fraudulent and deceptive marketing and advertising campaign constitutes an unlawful, unfair or fraudulent business act or practice within the meaning of the California Unfair Competition Law, *Cal Bus & Prof Code § 17200, et seq.*

(c)   Whether Defendants disseminated or caused to be made or disseminated before the public in this state, or made or disseminated or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, in violation of the False Advertising Act, *Cal Bus & Prof Code § 17500, et seq.*

- 23 -

Exhibit 1 Page 34

(d)    Whether Defendants' intended for Plaintiffs to rely on their deceptive and misleading advertisements in making their determination to enroll with LifeLock;

(e)    Whether Plaintiffs and the putative class sustained injuries in fact, or monetary losses as a result of Defendants' fraudulent and deceptive marketing and advertising campaign;

(f)    Whether Defendants' affirmative statements and material omissions constitute an unfair or deceptive act or practice;

(g)    Whether LifeLock's radio, television, internet and print advertisements contained fraudulent representations and omissions;

(h)    Whether the arbitration provision in the LifeLock "Terms & Conditions" is unconscionable and unenforceable;

(i)    Whether the class action prohibition provision in the LifeLock "Terms & Conditions" is unconscionable and unenforceable;

(j)    Whether the exculpatory provision dealing with attorney's fees and costs contained in the LifeLock "Terms & Conditions" is unconscionable and unenforceable;

(k)    Whether Plaintiff and the putative class are entitled to recover compensatory, exemplary, statutory, minimum, and/or punitive damages, based on Defendants' fraudulent and illegal conduct or practices;

(l)    Whether Plaintiff and the putative class are entitled to restitution and/or disgorgement of any ill-gotten gains; and

- 24 -

(m)   Whether Plaintiff and the putative class are entitled to an injunction, enjoining LifeLock from further engaging in the deceptive practices alleged herein.

136.   **Typicality:**   Plaintiff is a member of the class.  Plaintiff's claims have a common origin and share common bases.  His claims originate from the same illegal and fraudulent practices of Defendants, and Defendants act in the same way toward Plaintiff and the class members.  If brought and prosecuted individually, the claims of each putative class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

137.   **Adequacy of Representation:**   Plaintiff can and will fairly and adequately represent and protect the interests of all members of the class.  He has no interests that conflict with or are antagonistic to the interests of the class members, and intends to prosecute this action vigorously.  Plaintiff has retained the undersigned counsel who are competent and experienced in class action and complex commercial litigation.  As such, Plaintiff's counsel will fairly and adequately protect the interests of the class.

138.   Plaintiff's counsel will fairly and adequately protect the interests of the class.

139.   **Superiority:**   A class action is superior to any other available method for the fair and efficient adjudication of this controversy, because:  (a) common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there will be efficiencies to the courts and the parties in litigating the common issues on a class basis rather than on an individual basis; (b) the damages to some class members are larger than to others, but all claims are sufficiently small that individual prosecution of the claim would not be an economically viable alternative; (c) class treatment is desired for optimal

- 25 -

1   deterrence and compensation; (d) the economies of scale inherent in litigating similar claims

2   on a common basis will enable this case to be litigated on a cost-efficient basis as a class

3   action, especially when compared to repetitive individual actions; (e) no unusual difficulties

4   are likely to be encountered in the management of this class action as the proofs as to liability

5   are common to all class members; and (f) this action would be effectively impossible to bring

6   as individual actions leaving Plaintiff and others similarly situated with no viable remedy.

7

8

9                              **FIRST COUNT**

10              **VIOLATION OF UNFAIR COMPETITION LAW**

11                 **Cal Bus & Prof Code § 17200, et seq.**

12

13       140.   Plaintiff realleges and incorporates herein the allegations contained in the

14   preceding paragraphs.

15       141.   The acts and practices alleged herein were and are likely to mislead the general

16   public and are unfair business practices within the meaning of *Business and Professions Code §*

17   *17200 et seq.*

18       142.   The acts and practices alleged herein were and are likely to mislead the general

19   public and are unlawful business practices within the meaning of *Business and Professions Code §*

20   *17200 et seq.*

21       143.   The acts and practices alleged herein were and are likely to mislead the general

22   public and are fraudulent business practices within the meaning of *Business and Professions Code §*

23   *17200 et seq.*

24       144.   *Business and Professions Code § 17200* imposes strict liability upon the Defendants

25   for the deceptive, unlawful, unfair and fraudulent acts as alleged herein, which were intended to and

- 26 -

COMPLAINT

in fact did mislead the general public, including Plaintiff, within this state.

145.   Defendants deceptive advertisements, marketing scheme and general conduct are practices within the meaning of the *Business and Professions Code § 17200.*

146.   Defendants violation of Business and Professions Code § 17500 as alleged herein this complaint is a violation of the Business and Professions Code § 17200.

147.   Every single advertisement in the above reference advertising campaign included misrepresentations which were meant to create the net impression that: (i) all LifeLock subscribers were provided comprehensive protection from all forms of identity theft; and (ii) all LifeLock subscribers would be reimbursed, up to one-million dollars ($1,000,000) for any financial losses sustained as a result of identity theft.

148.   Defendants intended for the Plaintiffs and the putative class to rely on those universal misrepresentations and omissions contained within LifeLock's advertisements as a means to induce them to enroll with LifeLock, and the Plaintiffs and the putative class did in fact rely on said misrepresentations and omissions.

149.   Plaintiffs and the putative class have paid money to LifeLock, in the form of monthly or annual subscription fees.

150.   The subscription fees paid by the Plaintiffs and the putative class constitute injuries in fact and money lost as a result of Defendants' deceptive conduct.

151.   Based on Defendants violations of *Business and Professions Code § 17200,* Plaintiffs are entitled to disgorgement of all ill-gotten gains, including without limitation all fees collected by Defendants from the Plaintiff and the Class.

152.   Based on Defendants violations of *Business and Professions Code § 17200,* Defendants are entitled to restitution.

*1   38*

153.    Based on Defendants violations of *Business and Professions Code § 17200*, Defendants are entitled to injunctive relief to require Defendants to cease any and all deceptive advertisements and to take all necessary corrective measures with respect to the manner and substance of its advertisements.

## SECOND COUNT

## VIOLATION OF THE FALSE ADVERTISING LAW

## Cal Bus & Prof Code § 17500, et seq.

154.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

155.    Defendants purportedly sell and provide identity theft protection services to the public throughout the United States, including those residents of this state.

156.    Defendants purportedly sell and provide a one-million dollar ($1,000,000) service guarantee in connection with those purported identity theft protection services.

157.    In furtherance of the sale of the above referenced "services" and "guarantee," Defendants engaged in a misleading and deceptive advertising campaign which is deployed through print media, television, radio, and the internet, and which reaches and impacts the residents of this state, including the Plaintiff.

158.    Through the above referenced advertising campaign, Defendants have disseminated or caused to be made or disseminated directly to Plaintiff and the general public in this state, statements concerning the performance of those "services" and the "guarantee" thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

- 28 -

COMPLAINT

159.    Every single advertisement in the above reference advertising campaign included misrepresentations which were meant to create the net impression that: (i) all LifeLock subscribers were provided comprehensive protection from all forms of identity theft; and (ii) all LifeLock subscribers would be reimbursed, up to one-million dollars ($1,000,000) for any financial losses sustained as a result of identity theft.

160.    Defendants intended for the Plaintiffs and the putative class to rely on those universal misrepresentations and omissions contained within LifeLock's advertisements as a means to induce them to enroll with LifeLock, and the Plaintiffs and the putative class did in fact rely on said misrepresentations and omissions.

161.    Plaintiffs and the putative class have paid money to LifeLock, in the form of monthly or annual subscription fees.

162.    The subscription fees paid by the Plaintiffs and the putative class constitute injuries in fact and money lost as a result of Defendants' deceptive conduct.

## THIRD COUNT

### UNJUST ENRICHMENT

163.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

164.    Defendants have, by virtue of payments made by Plaintiff and others like him throughout the State of California, received hundreds of thousands of dollars in payments and have not provided the services that were promised and/or advertised.

165.    Defendants have, therefore, received a benefit from Plaintiff and others like him,

- 29 -

1   40

the receipt of which constitutes unjust enrichment to Defendants.

166.    The Plaintiff and others like him are entitled to an award of damages or restitution consisting of the amounts that they paid to LifeLock and all other Defendants known or unknown.

## INJUNCTIVE RELIEF

167.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

168.    As a result of the foregoing, and because money damages are inadequate to fully compensate Plaintiff and others similarly situated, or to prevent further instances of the future violations, preliminary and permanent injunctive relief is warranted as follows:

> a. LifeLock shall cease advertising its services in California, unless and until all advertisements are revised to include language that is neither deceptive or misleading; and
>
> b. LifeLock shall be permanently enjoined from implementing the marketing scheme described herein or incorporated by reference.

## DECLARATORY JUDGMENT

169.    Plaintiff realleges and incorporates herein the allegations contained in the preceding paragraphs.

170.    In addition to the extremely one-sided terms included in its form adhesive "Terms and Conditions," LifeLock has included procedural obstacles, which intend to discourage claims against it and/or attempt to shield it from any liability.

- 30 -

171.   These aforementioned provisions are unenforceable.

172.   The provisions include, *inter alia*:

(a) Paragraph "11" requiring that all claims or disputes against LifeLock be governed by the laws of the State of Arizona; and

(b) Paragraph "12" requiring that: (i) any disputes or controversies arising from the "Terms & Conditions," against LifeLock, be settled by confidential arbitration; (ii) the subscriber agree not to participate in any dispute against LifeLock as a class representative or as a member of a putative class; and (iii) the subscriber pay his or her attorney's fees and costs.

173.   The onerous provisions in the form adhesive franchise agreement are violative of California public policy and shall be declared void and unenforceable.

174.   Plaintiff is therefore entitled to a declaration from the Court that the LifeLock "Terms and Conditions," are void and unenforceable, or in the alternative, the Court shall strike those provisions that are unenforceable.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectively prays for the following relief:

a.   That the Court enter an Order certifying the proposed class herein and appointing Plaintiff and the undersigned counsel of record to represent the class;

b.   That the Court enter an Order rescinding the LifeLock subscription of Plaintiff and each and every member of the putative class based on Defendants' fraudulent inducement thereof or, alternatively, damages for said fraudulent conduct;

c.   That the Court issue a preliminary injunction enjoining Defendants and all

- 31 -

others, known and unknown, from continuing to engage in unlawful conduct as set forth in this Complaint pending a determination of the merits;

d.       That the Court issue a permanent injunction enjoining Defendants and all others, known and unknown, from continuing to engage in unlawful conduct as set forth in this Complaint;

e.       That the Court enter a declaratory judgment, declaring those offensive and unlawful provisions contained within the "Terms & Conditions" entered into by Plaintiff and each and every member of the putative class void and unconscionable and, therefore, unenforceable;

f.       That the Court enter a declaratory judgment declaring the acts of Defendants to be in violation of *Cal Bus & Prof Code § 17200, et seq.;*

g.       That the Court enter a declaratory judgment declaring the acts of Defendants to be in violation of *Cal Bus & Prof Code § 17500, et seq.;*

h.       That Plaintiff, and each member of the putative class, be awarded damages for each violation of law alleged herein;

i.       That Plaintiff, and each member of the putative class, be awarded punitive damages against Defendants, in an amount to be determined at trial, for the willful, wanton and/or reckless disregard for their legal rights;

j.       That Plaintiff, and each member of the putative class, be awarded costs and a reasonable attorney's fee, and/or the general authority of this Court;

k.       That Plaintiff, and each member of the putative class, be awarded any and all additional compensatory, incidental and consequential damages, in an amount to be determined at trial;

- 32 -

1     l.     That Plaintiff, and each member of the putative class, be awarded prejudgment

2   and post-judgment interest on any and all of the foregoing damages, and

3     m.     That Plaintiff, and each member of the putative class, be awarded such further and

4

5   general relief – both legal and equitable – as this Court may deem appropriate.

6

7                          <u>DEMAND FOR TRIAL BY JURY</u>

8

9     Plaintiff demands a trial by Jury as to all issues.

10

11   Dated:   May 27, 3008                    **FREEDMAN & TAITELMAN, LLP**

12

13

14                                           Michael A. Taitelman, Esq.
                                             Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 33 -

Exhibit ____1____ Page ____44____

COMPLAINT

# DECLARATION

### DECLARATION OF TOM NICHOLS

I, Tom Nichols, declare:

1.     I am of majority age and am the Director of Marketing, Financial Planning and Analysis for Defendant LifeLock, Inc. ("LifeLock").  My responsibilities include tracking sales, revenue and subscriber data for LifeLock, including such data particular to subscribers who are California residents.  I make this Declaration in support of LifeLock's Notice of Removal to Federal Court in the matter of *Dillon, et al. v. LifeLock, Inc., et al.*, Los Angeles Superior Court Case No. BC391539 (the "Action").  I have personal knowledge of the following facts, to which I would competently testify if necessary.

2.     I have reviewed the Complaint in the Action.  Based on my review, the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  LifeLock's revenues from California members from 2005 to the date of filing of the Action exceeded $18,000,000.  In addition, there currently are over 100,000 LifeLock subscribers who are California residents, and Plaintiff is seeking, among other things, rescission of the putative class members' subscriptions.  Complaint at 31:24-27.  Moreover, LifeLock's projected revenues from California from its presently existing members and from prospective future members, which is at risk in this litigation based on Plaintiff's request for injunctive relief barring LifeLock from advertising or selling its services for California members as set forth in the Complaint, also far exceed the required amount in controversy of $5,000,000, when viewed from LifeLock's perspective and its revenues at risk of being lost by the relief sought in this case.

I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on July 9, 2008 in *TEMPE*, Arizona.

TOM NICHOLS

*Thomas J. Nichols*

1

NOTICE OF REMOVAL

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 2450 Colorado Avenue, Suite 400E, Santa Monica, California 90404.

On July 10, 2008, I served the **NOTICE OF REMOVAL [Supporting Declaration of Tom Nichols Attached]** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope, postage prepaid, addressed as follows:

FREEDMAN & TAITELMAN, LLP          MARKS & KLEIN, LLP
Michael A. Taitelman, Esq.         Justin M. Klein, Esq.
Jesse A. Kaplan, Esq.              David S. Paris, Esq.
1901 Avenue of the Stars, Suite 500   63 Riverside Drive
Los Angeles, CA  90067             Red Bank, New Jersey  07701
Telephone:  310-201-0005
Facsimile:  310-201-0045

☒ **(BY MAIL)**

☐ I deposited such envelope in the mail at Santa Monica, California.  The envelope was mailed with postage thereon fully prepaid.

☒ I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service.  The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Santa Monica, California, in the ordinary course of such business.

☒ **(STATE)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 10, 2008, at Santa Monica, California.

_Monica A. Solorzano_
Signature

Monica A. Solorzano
Print Name

*PHX 328,300,032v1 7-8-08*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV08- 4515 SVW (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| ROBERT DILLON, Individually and on behalf of all others similarly situated | LIFELOCK, INC., a Delaware Corporation; RICHARD TODD DAVIS, a citizen of the State of Arizona, and JOHN DOES 1 through 10, Inclusive |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Michael A. Taitelman; Jesse A. Kaplan<br>FREEDMAN & TAITELMAN, LLP<br>1901 Avenue of the Stars, Suite 500<br>Los Angeles, CA 90067<br>(310) 201-0005 | Jordan D. Grotzinger; Charlene L. Oh<br>GREENBERG TRAURIG, LLP<br>2450 Colorado Avenue, Suite 400E<br>Santa Monica, CA 90404<br>(310) 586-7700 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Putative class action removed under 28 U.S.C. § 1332(d)(2)(A); Unfair Competition; False Advertising; Unjust Enrichment; Injunctive Relief; Declaratory Judgment

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☒ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **IMMIGRATION** | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

| **FOR OFFICE USE ONLY:** Case Number: | CV08-04515 |
|---|---|

CV-71 (05/08)
PHX 328,300,934v1 7-9-08

**CIVIL COVER SHEET**

Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Contra Costa |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Arizona |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Arizona |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date July 9, 2008

Jordan D. Grotzinger

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

American LegalNet, Inc.
www.FormsWorkflow.com